UNITED STATES DISTRICT COURT
SOUTHERN DISCTRICT OF NEW YORK

| | |
|---|---|
| IN RE THE APPLICATION OF RSM PRODUCTION CORPORATION AND JACK GRYNBERG,<br><br><br>REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. §1782. | Civil Action No. 19-Misc.___ |

### DECLARATION OF NOAM SCHREIBER IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. §1782 TO PERMIT APPLICANTS TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING

I, Noam Schreiber, Adv., hereby declare under the penalty of perjury as follows:

1. I am over eighteen years of age and am otherwise qualified to testify to the facts set forth below. All of the facts rendered herein are based on my personal knowledge.

2. My name is Noam Schreiber and I am local Israeli counsel for the Applicants in an action now pending before the Jerusalem District Court in the State of Israel, styled as *RSM Production Corporation et al. v. Minister of Energy and Infrastructure et al.*, Civil Case No. 27516-04-14 (the "Israeli Proceeding").

3. I am a member in good standing of the Israel Chamber of Advocates, also known as the Israel Bar Association, under the Chamber of Advocates Law, 5721 – 1961, Bar No. 61276 (admitted 2012).

- 1 -

## I. THE ISRAELI PROCEEDING

4. The Israel Proceeding was commenced in April 2015, by filing a Statement of Complaint (the "Original Israeli Complaint") with the Jerusalem District Court. The Defendants in the Israeli Proceeding are: (a) the Minister of National Infrastructure, Energy and Water (the "Ministry"); (b) the Commissioner of Petroleum Affairs within the Ministry and (c) the Petroleum Law Advisory Council, a public body established under the aegis of the Ministry (collectively, "Defendants"). The New York Banks referred to in the Section 1782 Application are not a party in the Israeli Proceeding.

5. The Defendants in the Israeli Proceeding are all officials and agencies of the Government of Israel. Under Israeli law, all Defendants are subject to suit for their tortious misconduct in the same manner as private defendants.

6. The Jerusalem District Court is a court of general jurisdiction established under the Israeli Courts Act [Consolidated Version], 5744 – 1984. The District Court is a trial court and conducts impartial adversarial proceedings in which the litigants have a right to be heard, conduct discover and to present evidence, to have legal representation, and to appeal as of right. [*See*, in general, the Courts Act, §§33-42].

7. Subsequently, on March 5, 2017, a Third Amended Statement of Complaint was filed (a Second Amended Statement of Complaint was filed on March 31, 2016). An English translation of the Third Amended Statement of Complaint (the "TAC") is attached to this Declaration as **Exhibit "A"**.

8. The TAC seeks money damages for alleged misconduct by Israeli government officials in collusion with certain persons and firms in the private sector. The TAC contains specific allegations against the alleged corrupt activities of Israeli officials during the relevant

timeframe, including allegations concerning then Israeli Minister of National Infrastructure, Energy and Water, Binyamin Ben-Eliezer ("Ben-Eliezer").

9. According to the TAC, in March 2000, Applicant RSM applied to the Ministry for an off-shore license for the exploration of petroleum and natural gas in the EEZ. This first application was denied on July 3, 2000. The Ministry grounded its denial in the unusual (and suspect) reason that the Applicant RSM lacked experience in off-shore drilling in depths of more than 500 meters. This was not the case as Applicant RSM had ample experience in off-shore drilling of more than 500 meters. [TAC, ¶¶ 5-6].

10. In December 2004, Applicant RSM applied once more for an off-shore license for the exploration of petroleum and natural gas in the EEZ. The Ministry denied RSM's application on the grounds that a previous moratorium on all off-sea exploration was currently in effect, therefore preventing the issuing of any exploration permits. [TAC, ¶¶ 9-10].

11. When the moratorium was lifted, Applicant RSM applied a third time for an off-shore permit for the exploration of petroleum and natural gas in the EEZ on April 25, 2006. Around three months later, on July 16, 2000, then Commissioner for Petroleum Affairs, Dr. Yaakov Mimran ("Dr. Mimran"), issued an exploration permit called 192/RSM (the "Permit"). The terms of the Permit were: (a) RSM was required to invest U.S.$600,000 to purchase seismic data which was then to be transferred to the Ministry; (b) RSM was required to process the said seismic data at the price of U.S. $700,000 and submit a report based on its finding to the Ministry no later than October 15, 2006. [TAC, ¶¶ 11-18].

12. The TAC alleges that the terms of the Permit were discriminatory, arbitrary and illegal. Upon information and belief, the discriminatory and arbitrary terms of the Permit were the

direct result of bribery by third parties who had an interest in keeping Applicant RSM out of the Israeli energy market and maintaining a monopoly in the EEZ. [TAC, ¶¶14-16].

13. Applicants alleged upon information and belief that between April 2006 and July 2006, certain interested parties bribed Ministry officials, including Ben-Eliezer. The purpose of these bribes was to cause the Defendants in the Israeli Proceeding to issue Applicant RSM a permit that would be so unrealistic and uneconomical that RSM would have no choice but to turn it down (*id.*). The interested parties that allegedly conducted clandestine dealings with the Defendants, include "Avner Petroleum and Gas, Ltd.", "Delek Drilling 1993 Ltd.", "Isramco Ltd.", and Nobel Energy, Inc. [TAC, ¶¶ 22-23, 24.7-24.11].

14. Because of the discriminatory and arbitrary terms of the Permit, RSM refused to exercise its rights under the Permit which subsequently expired. The TAC seeks damages from the Ministry in the amount of NIS 25,000,000. [TAC, ¶¶ 21].

15. The Israeli Proceeding is in the discovery stage which will continue to at least March 2019.

## II. THE INDICTMENT OF BEN-ELIEZER

16. On December 2, 2015, approximately eight months after the Applicants commenced the Israeli Proceeding, the Israel Attorney General's office filed an indictment against Ben-Eliezer for bribery, money laundering, breach of trust by a public official and fraud.

17. The first count in the Indictment concerns the receipt of U.S.$400,000 by Ben-Eliezer from businessman Avraham Nanikashvili. In return, Ben-Eliezer was suspected of promoting the interests of an Israeli corporation, Shemen Oil and Gas Resources Ltd. ("Shemen"), controlled by Nanikashvili and his partner, Jacky Ben-Zaken. The Indictment goes on to describe that when Ben-Eliezer was Minister of Industry, Trade and Labor, he cooperated with his then-

bureau chief, Ayelet Azulai, in pressuring the Israeli Petroleum Council (a defendant in the Israeli Proceeding), an agency still under his influence[1], to improve Shemen's chances of receiving a drilling license for what was then called the "Med Ashdod" site.

18. According to the Indictment, Ben Eliezer exploited his connections with the Ministry of Infrastructure and the Israel Petroleum Council in order to improve Nanikashvili's chances of receiving the said drilling license. This included providing Nanikashvili classified information regarding Shemen's application, providing Nanikashvili with the personal contacts of the members of the Israel Petroleum Council, and providing him with the protocols of the Israel Petroleum Council's meetings concerning Shemen's application. In addition, the Indictment alleges that Ben-Eliezer had clandestine conversations with the then Commissioner of Petroleum, Dr. Mimran, to convince him to issue a drilling license to Shemen.

19. Initially, on March 16, 2011, the Israel Petroleum Council denied Shemen's application. However, the information provided to Nanikashvili by Ben-Eliezer allowed him to personally contact the individual members of the Israel Petroleum Council after the denial of Shemen's application. Due in a large part to Ben Eliezer's illegal assistance, Nanikashvili was successful in convincing members of the Israel Petroleum Council to change their minds and call for a second meeting of the Council. On July 12, 2011, the Council met again to determine Shemen's application. The Council approved Shemen's application after initially denying it.

20. The Indictment goes on to describe how Ben-Eliezer accepted the U.S. $400,000 dollar "loan" from Nanikashvili that was never paid back. Nanikashvili transferred the money to

---

[1] Ben Eliezer was the Minister of Infrastructure from 2006-2009 and then the Minister of Industry, Trade and Labor from 2009-2011. According to the Indictment, as Minister of Industry, Ben Eliezer still had influence on the Ministry of Infrastructure.

Ben-Eliezer's personal bank account in Israel on September 26, 2011, from a Swiss bank account at Union Bancaire Privée.

21. Subsequent to the filing of the Indictment, on August 28, 2016, Ben Eliezer passed away. As a result, Ben Eliezer is no longer a defendant in the criminal proceedings.

22. On September 29, 2016, Jacky Ben-Zaken, Nanikashvili's partner, entered into a plea bargain with government of Israel. In the framework of this plea bargain, Ben-Zaken was found guilty for breach of trust and for being an accessory to a crime. The Israeli court sentenced Jacky Ben-Zaken to four months imprisonment and a monetary fine.

23. Nanikashvili did not take a plea bargain and a full evidentiary trial was held. Closing arguments were held on May 1, 2018 and the Israeli court is scheduled to issue a verdict for Nanikashvili on March 12, 2019.

### III. RELEVANT ISRAELI LAW

24. A concise explanation on Israeli civil procedure and discovery is in place. Israeli civil procedure is mainly governed by Israel's Rules for Civil Procedure, 5744-1984 (the "IRCP"). Under the IRCP, a civil action is commenced by the filing of a Statement of Claim or a Statement of Complaint ("SoC"). [IRCP, §8]. This is analogous to a complaint in a federal action under Rule 3 of the Federal Rules of Civil Procedure. With certain exceptions not relevant here, the IRCP requires all defendants to submit a Statement of Defense ("SoD"). [IRCP, §49]. A SoD must aver specific facts in the event a defendant wishes to deny a factual allegation and cannot be a general denial of the allegations in the SoC. [IRCP, §85]. As a general rule, the SoD must be filed even though the defendants believe they have grounds for having the SoC dismissed by preliminary motion or application. Consequently, the SoD will contain not only the specific denials of the factual averments in the SoC, but also a detailed description of all defenses the defendants wish to

raise in the action.  Once an SoD is filed the defendant may apply to the court for an order striking the SoC for failure to state a cognizable claim, analogous to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or for any other reason (*e.g.* for lack of subject matter jurisdiction, personal jurisdiction, improper venue, inconvenient forum, arbitration and the like). [IRCP, §§100-101]

25.     Assuming the SoC survives an application for dismissal on a preliminary objection (as in the Israeli Proceeding) discovery is then opened. Discovery under the IRCP is much less extensive than that available under the Federal Rules of Civil Procedure.  With regard to discovery devices, the IRCP recognizes (a) interrogatories, (b) request for production of documents and (c) requests for admissions. [IRCP, §§102-124].   Israeli civil procedure does not allow for deposition upon oral examination or deposition on written questions.  However, discovery by oral or written depositions for use in foreign proceedings is permitted in applications for international judicial assistance under the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), which entered into force in Israel on September 17, 1979. The Hague Convention has been implemented through Israel's International Judicial Assistance Law, 5758 – 1998 and the regulations issued thereunder, *e.g.* the Judicial Assistance Regulation, 5759-1999 and the Regulations for Implement the Hague Convention of 1970 (Collection of Evidence), 5737-1977. *See* also *Yarkoni, et. al. v. Boston Scientific Corporation*, Civ. App. 2251/02 (Tel-Aviv Dis. Ct. June 17, 2003) (Israeli court allowed for depositions in Israel pursuant to a judicial assistance request by the United States District Court for the Southern District of New York); *A Court in the United States v. Tzemed Pitronot*, Civil Hikur Din 46834-02-18 (Jer. Magis. Ct. May 3, 2018) (Court allowed for deposition and document production pursuant to an action pending in the Supreme Court of the State of New York, Kings County).

26. Additionally, the Israeli court would be receptive to evidence obtained from the United States pursuant to Section 1782, provided that the evidence otherwise satisfies the requirements for admissibility under Israeli law.

27. The scope of discovery is far more restricted in Israeli practice even with respect to those devices which are authorized by the IRCP. For example, there is no Israeli equivalent of a *subpoena duces tecum* such as that authorized by Rule 45 of the Federal Rules of Civil Procedure. That said, evidence obtained from non-parties to an action is generally admissible provided that it otherwise satisfies the requirement for admissibility.

## IV.   INTENDED USE FOR THE DISCOVERY IN ISRAEL

28. The purpose of this 1782 proceeding is to obtain information and documents that will assist the Applicants in proving their allegations contained in the TAC. As mentioned above, the TAC alleges that Israeli government officials, including Ben-Eliezer, accepted illegal funds from third parties who had an interest in maintaining a monopoly in the EEZ.

29. The New York Banks, as defined in the 1782 Application, are likely to have records of any money transfers or other banking activities involving Ben-Eliezer and third parties. These records, in turn, will assist the Applicants in proving their allegations in the Israeli Proceeding. Alternatively, documents produced here may lead to other discoverable information relevant to the Israeli Proceeding.

30. As discussed already, evidence obtained pursuant to this 1782 proceeding can be – and certainly would be – admissible in the Israeli Proceeding.

_____
Noam Schreiber, Adv.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30 day of January 2019 in Jerusalem, Israel

_____
Noam Schreiber, Adv.

Case 1:19-mc-00041-ALC   Document 2   Filed 01/31/19   Page 10 of 10