UNITED STATES DISTRICT COURT
SOUTHERN DISCTRICT OF NEW YORK

| | |
|---|---|
| IN RE THE APPLICATION OF RSM PRODUCTION CORPORATION AND JACK GRYNBERG, <br><br> REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. §1782. | Civil Action No. 19-Misc.___ |

### MEMORANDUM OF LAW IN SUPPORT OF AN
### APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. §1782

Daniel L. Abrams
dan@lawyerquality.com
1250 Broadway, 36th Floor
New York, New York 10001
Telephone: (646) 821-4575
Attorney for Jack J. Grynberg

Jeffrey Michels
L. Marc Zell (*Pro Hac Vice To Be Filed*)
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES   LLC
350 Fifth Avenue
59th Floor
Empire State Building
New York, NY 10118
Phone: (212) 971-1349
Fax: (212) 253-4030
E-mail: jmichels@fandz.com; mzell@fandz.com
Attorneys for RSM Production Corp. and Jack J. Grynberg

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
JURISDICTION .............................................................................................................................. 2
PROCEDURAL AND FACTUAL BACKGROUND ................................................................... 2
THE ISRAELI PROCEEDING AND ITS ALLEGATIONS ....................................................... 2
BEN-ELIEZER IS INDICTED FOR BRIBERY ........................................................................... 4
THE NEW YORK BANKS ............................................................................................................ 6
A.   THE SECTION 1782 HOUSTON TEXAS PROCEEDING ............................................... 7
ARGUMENT ................................................................................................................................... 7
APPLICANTS SATISFY THE STATUTORY REQUIREMENTS OF 28 U.S.C. §1782 ......... 8
A.   INTEL'S DISCRETIONARY FACTORS STRONGLY FAVOR GRANTING THE
APPLICATIONS ........................................................................................................................... 10
THE NEW YORK BANKS ARE NOT PARTIES TO THE FOREIGN PROCEEDING ........ 10
THE CHARACTER AND NATURE OF THE ISRAELI PROCEEDING ARE CONSISTENT WITH
THE RELIEF SOUGHT HERE AND ISRAELI COURT WILL BE RECEPTIVE TO JUDICIAL
ASSITANCE FROM THE UNITED STATES ........................................................................... 10
THE INSTANT REQUEST IS NOT AN ATTEMPT TO CIRCUMVENT DISCOVERY
RESTRICTIONS IN THE ISRAELI PROCEEDING ................................................................. 11
1.   THE INSTANT REQUEST WILL NOT BE UNDULY BURDENSOME ON THE NEW YORK
BANKS .......................................................................................................................................... 12
CONCLUSION .............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Application of Gianoli Aldunate*, 3 F.3d 54, 58 (2d Cir. 1993) ....................................................... 9

*Application of Hornbeam Corp.*, 2014 WL 8775453 at *3-4 (S.D.N.Y, Dec. 24, 2014) ............... 9

*Application of RSM Prod. Corp.,* 195 F. Supp. 3d at 902 .................................................... 9, 10, 11

*Application of RSM Production Corporation and Jack Grynberg*, 195 F.Supp. 3d 899 (S.D. Tex., 2016) ............................................................................................................................................ 7

*Application of RSM Production Corporation and Jack Grynberg*, 2019 WL 126978 (S.D. Tex., Jan. 8, 2019) ................................................................................................................................ 7

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2nd Cir. 2012) ............. 11, 12

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015) 9

*Euromepa S.A.* v. *R. Esmerian, Inc.,* 51 F.3d 1095, 1098 (2d Cir. 1995) ..................................... 11

*Godfrey*, 526 F.Supp.2d 417, 419 (S.D.N.Y.2007) ...................................................................... 10

*Intel Corp. v. Adv. Micro Devices, Inc.,* 542 U.S. 241 (2004) .................................................. 1, 10

*Ishihara Chem. Co., Ltd.,* 251 F.3d 120, 124 (2d Cir. 2001) .......................................................... 8

*Lancaster Factoring Co., Ltd. v. Mangone,* 90 F.3d 38, 42 (2d Cir. 1996) ................................... 9

*RSM Production Corporation et al. v. Minister of Energy and Infrastructure et al.*, Civil Case No. 2751604-15 ............................................................................................................................ 2

*RSM Production Corporation*, 2018 WL 1229705 (S.D.N.Y. March, 9, 2018) .......................... 13

**Other Authorities**

28 U.S.C. §1782 .......................................................................................................................... 1, 7

**Rules**

Federal Rule of Civil Procedure 26 ............................................................................................. 13

Applicants, RSM Production Corporation and Jack Grynberg ("Applicants") for their memorandum of law in support of an application for discovery pursuant to 28 U.S.C. §1782, state as follows:

**PRELIMINARY STATEMENT**

This Application seeks an order pursuant to 28 U.S.C. §1782 to discover information that would shed light on the alleged transfer of funds to a former Israeli government official, Mr. Binyamin Ben-Eliezer, for bribery. The foreign proceeding to which this Application is predicated, alleges that Mr. Ben-Eliezer, the former Israel Minister of Infrastructure, Energy and Water (who was indicted for bribery and then died) took funds from oil, gas and energy companies interested in keeping Applicant RSM out of the Israeli energy market and maintaining their monopoly in Israel's Mediterranean Sea. Accordingly, this Application seeks documents from financial institutions located in this District (the "New York Banks")[1]— which routinely act as intermediary banks for international wire transfers – that may document money transfers to Ben-Eliezer's accounts, whether in Israel, the U.S. or abroad, in connection with the alleged bribery. As demonstrated below, §1782's statutory requirements are met and the discretionary factors set forth in *Intel Corp. v. Adv. Micro Devices, Inc.,* 542 U.S. 241 (2004) strongly support granting this application.

---

[1] The New York Banks are Bank of America N.A.; Bank of NY Mellon; BNP Paribas SA; Citibank N.A.; Commerzbank AG; Deutsche BankAG; HSBC Bank (USA) NA; JPMorgan Chase Bank N.A.; Royal Bank of Scotland PLC; Standard Chartered Bank; UBS AG; Wells Fargo Bank. N.A.; Credit Suisse; and Safra Bank.

1

## JURISDICTION

Jurisdiction is proper pursuant to 28 U.S.C. §1782 as this Application is for discovery involving persons and documents located within the Southern District of New York.

## PROCEDURAL AND FACTUAL BACKGROUND

## THE ISRAELI PROCEEDING AND ITS ALLEGATIONS

The foregoing is based on a declaration of Applicants Israeli attorney, Adv. Noam Schreiber ("Schreiber Decl."), attached here as Exhibit "A." In April 2015, Applicants commenced a foreign proceeding in Israel (the "Israeli Proceeding") by filing a Statement of Complaint with the Jerusalem District Court styled as *RSM Production Corporation et al. v. Minister of Energy and Infrastructure et al.*, Civil Case No. 27516-04-15 (the "Original Complaint"). The defendants are: (a) the Minister of National Infrastructures, Energy and Water; (b) the Commissioner of Petroleum Affairs within the Ministry of Energy; and (c) the Petroleum Law Advisory Council, a public body established under the aegis of the Ministry of National Infrastructure (collectively, "Defendants"). The Original Complaint sought money damages for alleged misconduct by Israeli government officials in collusion with certain persons and firms in the private sector to restrict the issuance of permits and licenses that would have enabled the Applicants to explore and eventually drill for hydrocarbons (natural gas, condensate and petroleum) in Israel's exclusive economic zone ("EEZ") located within the Eastern Mediterranean Sea.

The Defendants filed an answer on October 12, 2015 (the "Original Answer"). Ultimately, a third amended complaint was filed on March 5, 2017 (the "TAC"). An English translation of the TAC is attached to the Schreiber Decl. The TAC seeks money damages for alleged misconduct

2

by Israeli government officials in collusion with certain persons and firms in the private sector. The TAC contains specific allegations against the alleged corrupt activities of Israeli officials during the relevant timeframe, including allegations concerning then Israeli Minister of National Infrastructure, Energy and Water, Binyamin Ben-Eliezer.

According to the TAC, in March 2000, Applicant RSM applied to the Israel Ministry of National Infrastructure, Energy and Water for an off-shore license for the exploration of petroleum and natural gas in the EEZ. This first application was denied on July 3, 2000. The Ministry grounded its denial in the unusual (and suspect) reason that the Applicant lacked experience in off-shore drilling in depths of more than 500 meters. This was not the case as Applicant RSM had ample experience in off-shore drilling of more than 500 meters.

In December 2004, Applicant RSM applied once more for an off-shore license for the exploration of petroleum and natural gas in the EEZ. The Ministry denied RSM's application on the grounds that a previous moratorium on all off-sea exploration was currently in effect, therefore preventing the issuing of any exploration permits.

When the moratorium was lifted, Applicant RSM applied a third time for an off-shore permit for the exploration of petroleum and natural gas in the EEZ on April 25, 2006. Around three months later, on July 16, 2000, then Commissioner for Petroleum Affairs, Dr. Yaakov Mimran ("Dr. Mimran"), issued an exploration permit called 192/RSM (the "Permit"). The terms of the Permit were: (a) RSM was required to invest U.S.$600,000 to purchase seismic data. This data was then to be transferred to the Ministry; (b) RSM was required to process the said seismic data at the price of U.S. $700,000 and submit a report based on its finding to the Ministry no later than October 15, 2006.

The TAC alleges that the terms of the Permit were discriminatory, arbitrary and illegal. Upon information and belief, the discriminatory and arbitrary terms of the Permit were the direct result of bribery by third parties who had an interest in keeping the Applicants out of the Israeli energy market and maintaining a monopoly in the EEZ (TAC, ¶¶14-16). Applicants alleged upon information and belief that between April 2006 and July 2006, certain interested parties bribed Ministry officials, including the then Minister of Infrastructure, Ben-Eliezer. The purpose of these bribes was to cause the Defendants in the Israeli Proceeding to issue Applicant RSM a permit that would be so unrealistic and uneconomical that RSM would have no choice but to turn it down (*id.*). The interested parties that allegedly conducted clandestine dealings with the Defendants, include "Avner Petroleum and Gas, Ltd.", "Delek Drilling 1993 Ltd.", "Isramco Ltd.", and Nobel Energy, Inc. Because of the discriminatory and arbitrary terms of the Permit, RSM refused to exercise its rights under the Permit which subsequently expired. The TAC seeks damages from the Ministry in the amount of NIS 25,000,000 (approximately U.S. $6.8 million)

The Israeli Proceeding is in the discovery stage which will continue to at least March 2019 (*See* Schreiber Decl., ¶15).

**BEN-ELIEZER IS INDICTED FOR BRIBERY**

On December 2, 2015, approximately eight months after Applicants commenced the Israeli Proceeding, the Israel Attorney General's office filed an indictment against Ben-Eliezer for bribery, money laundering, breach of trust by a public official and fraud.

The first count in the Indictment concerns the receipt of U.S.$400,000 by Ben-Eliezer from businessman Avraham Nanikashvili. In return, Ben-Eliezer was suspected of promoting the interests of an Israeli corporation, Shemen Oil and Gas Resources Ltd. ("Shemen"), controlled by Nanikashvili and his partner, Jacky Ben-Zaken. The Indictment goes on to describe that when

4

Ben-Eliezer was Minister of Industry, Trade and Labor, he cooperated with his then-bureau chief, Ayelet Azulai, in pressuring the Israeli Petroleum Council (a defendant in the Israeli Proceeding), an agency still under his influence[2], to improve Shemen's chances of receiving a drilling license for what was then called the "Med Ashdod" site.

According to the Indictment, Ben Eliezer exploited his connections with the Ministry of Infrastructure and the Israel Petroleum Council in order to improve Nanikashvili's chances of receiving the said drilling license. This included providing Nanikashvili classified information regarding Shemen's application, providing Nanikashvili with the personal contacts of the members of the Israel Petroleum Council, and providing him with the protocols of the Israel Petroleum Council's meetings concerning Shemen's application. In addition, the Indictment alleges that Ben-Eliezer had clandestine conversations with the then Commissioner of Petroleum, Dr. Mimran, to convince him to issue a drilling license to Shemen.

Initially, on March 16, 2011, the Israel Petroleum Council denied Shemen's application. However, the information provided to Nanikashvili by Ben-Eliezer allowed him to personally contact individual members of the Israel Petroleum Council after the denial of Shemen's application. Due in a large part to Ben Eliezer's illegal assistance, Nanikashvili was successful in convincing members of the Israel Petroleum Council to change their minds and call for a second meeting of the Council. On July 12, 2011, the Council met again to determine Shemen's application. The Council approved Shemen's application after initially denying it.

The Indictment goes on to describe how Ben-Eliezer accepted the U.S. $400,000 dollar "loan" from Nanikashvili that was never paid back. Nanikashvili transferred the money to Ben-

---

[2] Ben Eliezer was the Minister of Infrastructure from 2006-2009 and then the Minister of Industry, Trade and Labor from 2009-2011. According to the Indictment, as Minister of Industry, Ben Eliezer still had influence on the Ministry of Infrastructure.

5

Eliezer's personal bank account in Israel on September 26, 2011, from a Swiss bank account at Union Bancaire Privée.

Subsequent to the filing of the Indictment, on August 28, 2016, Ben Eliezer passed away. As a result, Ben Eliezer is no longer a defendant in the criminal proceedings.

On September 29, 2016, Jacky Ben-Zaken, Nanikashvili's partner, entered into a plea bargain with government of Israel. In the framework of this plea bargain, Ben-Zaken was found guilty for breach of trust and for being an accessory to a crime. The Israeli court sentenced Jacky Ben-Zaken to four months imprisonment and a monetary fine.

Nanikashvili did not take a plea bargain and a full evidentiary trial was held. Closing arguments were held on May 1, 2018 and the Israeli court is scheduled to issue a verdict for Nanikashvili on March 12, 2019.

Applicants now seek this Court's assistance in collecting evidence that would otherwise be unavailable . This evidence, in turn, will serve to support the Applicants' allegations in the Israeli Proceeding concerning the alleged illegal conduct –bribery – in relation to Applicant RSM's exploration Permit. These series of events led Applicants to believe that Ben-Eliezer was also improperly bought out in connection with Applicant RSM's Permit. Moreover, any dollar denominated transfers that Ben-Eliezer would have received in connection with the Permit, are likely to have been facilitated by the New York Banks, as intermediary banks.

## **THE NEW YORK BANKS**

The New York Banks routinely serve as intermediary banks in the facilitation of international wire transfers. Generally, when banks make international wire transfers, if the banks do not have a direct relationship – i.e. if the transferor bank does not manage or own a commercial account with the transferee bank – then an intermediary bank is required. An intermediary bank is

a bank that has a commercial account in both the transferor bank and the transferee bank.  As intermediary banks, the New York Banks record all international wire transactions in which they serve as an intermediary. Upon information and belief, any dollar-denominated funds Ben-Eliezer received in connection with the RSM permit have been recorded by the New York Banks.

A. **THE SECTION 1782 HOUSTON TEXAS PROCEEDING**

In May 2016, Applicants initiated an *ex parte* Section 1782 Proceeding for discovery from Noble Energy in the United States District Court for the Southern District of Texas. *In re Application of RSM Production Corporation and Jack Grynberg*, 195 F.Supp. 3d 899 (S.D. Tex., 2016) (the "Houston Proceeding"). Like the present Application, the Houston Proceeding was predicated on the Israeli Proceeding. On June 27, 2016, after briefing the issues and a hearing, the court issued an order granting in part the application for discovery from Noble Energy. The court ordered Noble Energy to produce documents in its possession responsive to a revised document request. In addition, the court instructed Noble Energy to "designate a Rule 30(b)(6) witness who was involved in the due diligence associated with any decisions made by Noble relating to NEML's participation in the consortium." Pursuant to the Houston Proceeding, a deposition was held on August 30, 2016 and documents were produced by Noble Energy.  Most recently, the Court in the Houston Proceeding entered a further order compelling Noble Energy to produce documents. *In re Application of RSM Production Corporation and Jack Grynberg*, 2019 WL 126978 (S.D. Tex., Jan. 8, 2019).

**ARGUMENT**

Under Section 1782, a party to a litigation in a foreign country can seek discovery for use in that litigation in a federal district court.  That section provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a

foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The twin aims of 28 U.S.C. §1782 are to provide 'efficient means of assistance to participants in international litigation in our federal court' and to encourage 'foreign countries by example to provide similar means of assistance to our courts.'" *In re Ishihara Chem. Co., Ltd.,* 251 F.3d 120, 124 (2d Cir. 2001). Analysis under Section 1782 is made in a two-step process which consists of (a) a review of the statutory requirements and (b) discretionary factors identified by *Intel*.

Once the statutory factors have been met, Section 1782 authorizes, but does not require, that judicial assistance be granted, which is subject to the discretion of the district court. The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

**APPLICANTS SATISFY THE STATUTORY REQUIREMENTS OF 28 U.S.C. §1782**

Applicants need only satisfy three statutory requirements under Section 1782(a). Applicants need only demonstrate that (1) that the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery

8

is for use in a proceeding before a foreign tribunal; and (3) that the application is made by a foreign or international tribunal or any interested person. *In re Application of Gianoli Aldunate*, 3 F.3d 54, 58 (2d Cir. 1993). To satisfy the second and third statutory requirements, applicants must establish that the discovery sought is for use in a proceeding before a foreign tribunal and applicants are interested persons. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015). Each of the three statutory criteria has been satisfied.

*First*, the person/entity from whom discovery is sought, i.e. the New York Banks, each have offices in this District and therefore are "found" here for purposes of Section 1782. *In re Application of Hornbeam Corp.,* at *3-4.

*Second*, the Jerusalem District Court is a foreign tribunal within the meaning of the statute. *See In re Application of RSM Prod. Corp.,* 195 F. Supp. 3d at 902 (quote); *Ex Parte Darmon*, 2017 WL 3283969 at *3 (N.D. Cal. Aug. 2, 2017) (Israeli court is a "foreign tribunal" for 1782 purposes). In addition, the discovery is intended "for use" in the Israeli Proceeding. Bank documents recording wire transfers to Ben-Eliezer would assist in further proving Applicants' claims that public officials within the Israeli Ministry of Infrastructure, including Ben-Eliezer, had illegal motives when granting Applicant RSM the exploration Permit that was unfair, unreasonable and arbitrary. *In re Application of Hornbeam Corp.*, 2014 WL 8775453 at *3-4 (S.D.N.Y, Dec. 24, 2014) (granting similar discovery request for bank documents for use in a contemplated foreign proceeding).

*Third*, Applicants are plaintiffs in the Israeli Proceeding and plainly "interested persons" within the ambit of Section 1782. *See Lancaster Factoring Co., Ltd. v. Mangone,* 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to 1782 makes plain that 'interested person' includes a

party to the foreign litigation."). See also *In re Application of RSM Prod. Corp.,* 195 F. Supp. 3d at 902 (court found that parties had no real dispute as to the three requirements).

### A. INTEL'S DISCRETIONARY FACTORS STRONGLY FAVOR GRANTING THE APPLICATIONS

**THE NEW YORK BANKS ARE NOT PARTIES TO THE FOREIGN PROCEEDING**

*Intel's* first discretionary factor is where the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264; *See In re Godfrey*, 526 F.Supp.2d 417, 419 (S.D.N.Y.2007) (asking "whether the document or testimony sought were within the foreign tribunal's jurisdictional reach, and thus accessible absent §1782 aid") (internal quotations omitted). If so this disfavors discovery. If not, it favors discovery. The New York Banks are not parties in the Israeli Proceeding. Thus, the first discretionary factor weighs heavily in favor of granting the Application.

**THE CHARACTER AND NATURE OF THE ISRAELI PROCEEDING ARE CONSISTENT WITH THE RELIEF SOUGHT HERE AND ISRAELI COURT WILL BE RECEPTIVE TO JUDICIAL ASSITANCE FROM THE UNITED STATES**

*Intel's* second discretionary factor is whether the request for relief is consistent with the character and nature of the Israeli Proceeding and whether the foreign court is receptive to judicial assistance from the United States. *Intel,* 542 U.S. at 244. The nature of the proceedings before the Israeli court is similar to proceedings before federal and state courts of general jurisdiction in the United States. Specifically, the Israeli court is a trial court and conducts impartial adversarial proceedings in which the litigants have a right to be heard, to present evidence, to have legal representation, and to appeal as of right. Schreiber Decl., ¶6. *See also Ex Parte Darmon*, 2017 WL

3283969 at *3 (second factor weighed in favor of discovery because Israeli proceeding was comparable to a civil action filed in a state or federal court).

Additionally, Israeli courts are receptive to evidence obtained from the United States. *See In re Application of RSM Prod. Corp.,* 195 F. Supp. 3d at 905 (second factor weighed in favor of discovery because the "[t]he parties do not dispute that Israeli courts are generally receptive to § 1782 evidence"); *see* also *Ex Parte Darmon*, *supra*, at *3.

## THE INSTANT REQUEST IS NOT AN ATTEMPT TO CIRCUMVENT DISCOVERY RESTRICTIONS IN THE ISRAELI PROCEEDING

The third Intel factors asks whether the discovery is designed to circumvent a policy of the foreign country or the United States.

*First*, the Application is not an effort to circumvent foreign proof gathering restrictions or another policy of the Israel. Evidence from non-parties to an Israeli action is generally admissible provided that it otherwise satisfies the requirement for admissibility. *See* Schreiber Decl., ¶27.

*Second,* there is no requirement under §1782 that the requested material be admissible or even discoverable under the rules governing the litigation in the foreign jurisdiction. *Intel*, 542 U.S. at 261; *In re Application of Hornbeam Corp., supra,* at *4; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2nd Cir. 2012) (just "as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a *section 1782* application"). Also, 1782 applicants are not required to seek "information through the foreign or international tribunal before requesting discovery from the district court." *Euromepa S.A.* v. *R. Esmerian, Inc.,* 51 F.3d 1095, 1098 (2d Cir. 1995) (rejecting "any implicit requirement that any evidence sought in the United

11

States be discoverable under the laws of the foreign country"). Thus, it is irrelevant under this factor whether the Applicants can obtain the discovery in Israel.[3]

*Third,* there is nothing that indicates that granting this request would undermine principles of comity or cooperation with the Israeli court. The very opposite is true: the Israeli court is not opposed to these cross-border discovery proceedings and in fact has taken an interest in the outcome of the Houston Proceedings. Moreover, Israeli counsel for the Defendants in the Israeli Proceeding also has expressed interest – and certainly has not opposed— the Houston Proceeding and is likely to do the same with this Application. In their document discovery requests, Defendants in the Israeli Proceeding have requested to receive all documents that were obtained in the Houston Proceeding. Applicants complied with that document demand and provided Defendants' counsel with transcripts of the deposition that took place in Houston as well as all relevant documents.

1. **THE INSTANT REQUEST WILL NOT BE UNDULY BURDENSOME ON THE NEW YORK BANKS**

The instant request will not be unduly burdensome on the New York Banks, thus satisfying the last *Intel* factor.

*First*, the discovery is limited both with respect to time and scope. Applicants have tailored their requests to seek only those bank documents where Ben Eliezer is an originator, beneficiary or is otherwise referenced in the wire transfer for the period beginning January 1, 2006 to December 31, 2008. *See In re Application of Hornbeam Corp.* at *5 (finding that a similar discover request was not unduly burdensome).

---

[3] In addition, §1782 does not require Applicants to establish that the sought evidence is admissible in the foreign action. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2nd Cir. 2012)

12

*Second*, the documents in question are in the possession and/or custody of the New York Banks.[4]

*Third*, the New York Bank have the clerical infrastructure and manpower to adequately process the proposed discovery requests – in fact, they do so on a routine basis. In any case, if any bank faces undue burden, counsel for Applicants can resolve this through the normal Rule 26 "meet and confer" process.

*Finally*, the Court may also consider the probative value of the requested materials in considering whether the request is unduly burdensome. *Id*. The requested documents may be highly probative because they may establish that Ben-Eliezer received funds from third parties whom had a stake and interest to keep Applicant RSM out of the Israeli energy market during the relevant time frame. This Application also targets a specific government official who was personally involved in the decision making process leading up to Applicant RSM's Permit in 2006. Ben-Eliezer was indicted for similar conduct involving the issuing of exploration permits and bribery. The information sought through this Application is unique to the New York Banks, as dollar-denominated international wire transactions are documented and recorded by these banks. Therefore, the information sought is crucial for the Applicants while pursuing their claims in Israel.

## CONCLUSION

Applicants request that the Court provide discovery assistance with respect to the Israeli Proceeding. Applicants request that the New York Banks, which are present in the Southern District of New York, be directed to provide discovery, described below, for use in the Israeli Proceedings. Assistance is appropriate here because: (a) each of the New York Banks "resides" at

---

[4] This Application is distinguishable from *In re RSM Production Corporation*, 2018 WL 1229705 (S.D.N.Y. March, 9, 2018) which denied discovery on the ground that the person from whom discovery could not be found in the District.

13

or is "found" in this district; (b) Applicants, the plaintiffs in the Israeli proceeding, are "interested" persons; (c) the Israeli Proceedings are pending before a "foreign or international tribunal," and the information obtained will be used in and in support of the Israeli Proceeding.

Wherefore, pursuant to 28 U.S.C. §1782, Applicants request that this Court enter an Order:

1. Authorizing Applicants to issue and serve subpoenas on the New York Banks for the production of the following documents:

2. All wire transfers to; wire transfers from; and all documents and records including but not limited to applications to open an account, account records, monthly statements, wire transfer records, deposit or withdraw records and/or cancelled checks in the name of, or concerning, Binyamin (or Benjamin) Ben-Eliezer for the period beginning January 1, 2006 to December 31, 2008.

3. Directing the New York Banks to produce the documents requested in their respective subpoenas within twenty-one days of service of the subpoena and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.

4. Directing the New York Banks to preserve documents and evidence, electronic or otherwise, in their possession, custody or control that contain information potentially relevant to the subject matter of the Applicants' document request.

5. Retaining jurisdiction over this matter for the purpose of enforcement and assessing any supplemental request for discovery assistance that may be requested by the Applicants.

In summary, based on the reasons set forth in this Memorandum of Law and in the exhibits attached hereto, Applicants clearly meet the requirements of 28 U.S.C. §1782, and this Application should be granted.

Dated:       New York, NY
             January 30, 2019


Respectfully submitted,

LAW OFFICE OF DANIEL L. ABRAMS, PLLC

By: *Daniel L. Abrams*
Daniel L. Abrams
dan@lawyerquality.com
1250 Broadway, 36th Floor
New York, New York 10001
Telephone: (646) 821-4575
Attorney for Jack J. Grynberg


/s/

Jeffrey Michels
L. Marc Zell (*Pro Hac Vice To Be Filed*)
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES   LLC
350 Fifth Avenue
59th Floor
Empire State Building
New York, NY 10118
Phone: (212) 971-1349
Fax: (212) 253-4030
E-mail: jmichels@fandz.com; mzell@fandz.com
Attorneys for RSM Production Corp. and Jack J. Grynberg

15